# SCHWARTZ PERRY HELLER LLP

3 PARK AVENUE, 27TH FL. NEW YORK, NY 10016
T: 212.889.6565 | F: 212.779.8208 | SPHLEGAL.COM

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> **SO ORDERED**
>
> _[signature]_
> VALERIE FIGUEREDO
> United States Magistrate Judge
> Dated: 4-10-2023
>
> A telephonic discovery conference to address this dispute is scheduled for **Monday, April 24, 2023 at 3:00 p.m**. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335.

      Re:    **DiBendetto v. Harman International Industries, Inc.**
                  22-CV-02029-PGG

Dear Judge Gardephe:

      We represent the Plaintiff Annette DiBenedetto ("DiBendetto") in the above-referenced matter. We write pursuant to Local Civil Rule 37.2 and Rule IV(E) of Your Honor's Individual Practices to respectfully request the Court's assistance in resolving a discovery dispute between the parties. Specifically, Plaintiff seeks the production of documents related to an investigation into Defendant Harman International Industries, Inc.'s ("Harman") investigation into DiBenedetto's complaint that was conducted by Jacqueline Mrachek of Littler Mendelson P.C. in or about June 2021, as well as the deposition of Ms. Mrachek.

      The parties have met and conferred in good faith but have been unable to resolve this issue. I sent a letter to defense counsel on February 14, 2023 regarding this issue and then discussed the matter with Ivie A. Serious, Esq. on February 23, 2023 by telephone for fifteen minutes.

**Plaintiff's Position**

      This is an age and sex discrimination case. DiBenedetto alleges, among other things, that she had responsibilities and opportunities taken from her and given to younger employees, one of whom was male, which actions were accompanied by ageist and sexist remarks. The discrimination ultimately forced DiBenedetto to take a medical leave starting March 30, 2021, which is continuing. DiBenedetto retained and attorney soon thereafter who was in contact with Harman's in-house counsel.

      The current discovery issue concerns Harman's refusal to produce documents related to an independent investigation that Harman conducted in April 2021, shortly after DiBenedetto's leave began. Harman has argued that (1) the attorney-client and attorney work product privileges shields the investigation and (2) the investigation was done in anticipation of litigation. Neither argument has any basis.

SCHWARTZ PERRY & HELLER LLP

The investigation records are not covered by any privilege because Harman's General Counsel, Michelle Taigman, assured me, by email dated April 23, 2023 that:

> "…that the attorney conducting the investigation, Jacqueline Mrachek, is not engaged as defense counsel and Ms. DiBenedetto is not required to participate in the investigation. While Littler does act as employment and defense counsel to HARMAN in many cases, Ms. Mrachek was engaged to conduct an independent investigation without any direction as to anticipated or desired outcome."

Accordingly, no privilege applies because Ms. Mrachek was not providing legal counsel but was rather conducting an independent investigation. Harman should not be permitted to prevent discovery into that investigation by subsequently hiring its "independent" investigator as its defense counsel. See Koumoulis v. Indep. Fin. Mktg. Grp., 29 F. Supp. 3d 142, 146 (E.D.N.Y. 2014) (recognizing that "investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel."); In re Grand Jury Subpoena, 750 F.2d 223, 224 (2d Cir. 1984) (recognizing that "[i]t is axiomatic that" the burden to demonstrate a privilege "is on a party claiming the protection of a privilege . . . a burden not discharged by mere conclusory or ipse dixit assertions.") (citations omitted).

Even if a privilege applied, Harman has waived it by asserting the Faragher/Ellereth affirmative defense in ¶135 of its Answer (dkt. 12). It is well settled that "[w]hen an employer puts the reasonableness of an internal investigation at issue by asserting the Faragher/Ellerth defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation. This waiver encompasses 'not only the investigative report itself, but all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.'" Koumoulis v. Indep. Fin. Mktg. Grp., 295 F.R.D. 28, 41 (E.D.N.Y. 2013), (Quoting Angelone v. Xerox Corp., 2011 U.S. Dist. LEXIS 109407, at *6 (W.D.N.Y. Sep. 26, 2011) (recognizing that "the clear majority view is that when a Title VII defendant affirmatively invokes a Faragher-Ellerth defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); see also Pray v. N.Y.C. Ballet Co., 1997 U.S. Dist. LEXIS 6995, at *7 (S.D.N.Y. May 16, 1997) ("Plaintiffs should be allowed to discover the initial communications from the Ballet to Proskauer, requesting that Proskauer conduct an internal investigation of the alleged harassment and any statements the Ballet may have made to Proskauer concerning investigative leads or the direction of the investigation. By asserting the investigations as a defense, the Ballet has placed in issue the reasonableness and sufficiency of those investigations.").

In the recent decision of Tromblee v. State of N.Y., 2022 U.S. Dist. LEXIS 127385, at *69 (N.D.N.Y. July 19, 2022), the court held that an affirmative defense identical to the one that Harman asserted waived any privilege, noting "As State defendants have asserted a Faragher/Ellerth affirmative defense by alleging the adequacy of their response to plaintiff's complaints and plaintiff's failure to take advantage of corrective measures, their internal

2

investigations are relevant and discoverable, as is the information relied on in them." Id. at *71.

Harman's argument that the investigation was done in anticipation of litigation is meritless. At the time, it represented that the investigation was a fact-finding mission that DiBenedetto reasonably believed could lead to the remediation of her workplace. Harman should not be permitted to retroactively claim that the investigation was done in anticipation of litigation when it represented it as something vastly different at the time.

Harman has not even provided a privilege log to assess when the purportedly privileged communications began. See Klosin v. Nemours, 2023 U.S. Dist. LEXIS 25099, at *31 (W.D.N.Y. Feb. 13, 2023) (holding that the defendant waived any privilege by not providing a privilege log and noting, "Withholding privileged materials without including the material in a privilege log may result in a finding that the privilege has been waived."); Babbitt v. Koeppel Nissan, Inc., 2019 U.S. Dist. LEXIS 122649, at *9 (E.D.N.Y. July 23, 2019) (ordering the employer produce a privilege log and "disclose the names of the individuals interviewed for the investigation, to ensure that Plaintiff will have full access to the facts underlying this action.") (citations omitted).

We also noticed the deposition of Ms. Mrachek but, for the reasons cited herein, Harman indicated that it would not voluntarily produce her.

Finally, Harman cannot claim that the investigation was done in anticipation of litigation when, at the time, it represented the investigation as a fact-finding mission that could lead to the remediation of DiBenedetto's workplace. Harman should not be permitted to trick DiBenedetto into meeting with its counsel in anticipation of the claim she may bring against the company. Permitting an employer to withhold production under these circumstances would deter any employee from participating in an investigation.

**Defendant's Position**

In early 2021, Defendant received concerns from Plaintiff regarding her belief that her job was not properly scoped and she felt she was not being fairly paid for all the work she performed. Defendant's human resources team ("HR") looked into it and determined the job description for what she was doing at Harman was accurate. Subsequently, Plaintiff raised additional general concerns about things being unfair and her not being given opportunities she thought she was entitled to. She also shared with HR that she was suffering from anxiety, and she was having significant stress due to work.

Harman's former general counsel, Michelle Taigman[1] retained Ms. Mrachek in early March 2020, to investigate Plaintiff's general allegations. As accurately stated by Ms. Taigman in April 2020, Ms. Mrachek was not retained as defense counsel as there was no filed or threatened legal action. Ms. Mrachek, who is an employment law attorney in Littler's Minneapolis office, was asked to investigate Plaintiff's concerns and provide legal advice and guidance as Plaintiff's allegations were escalating. In fact, Plaintiff's allegations expanded in early April when she sent a letter to HR stating for the first time she had been discriminated

---

[1] Ms. Taigman left Harman in approximately July 2022.

against due to her age and gender, and was retaliated against for escalating her concerns regarding discrimination. Ms. Taigman relied upon Ms. Mrachek's advice to guide the business and HR regarding Plaintiff's allegations.

In addition to interviewing Plaintiff (with her counsel present throughout the interview as mandated by Plaintiff), Ms. Mrachek interviewed Darrin Shechuk, Lori Lampman and Ms. Garrigan. Plaintiff has noticed all three of these depositions which are taking place in the next month or two. Presumably, Plaintiff will inquire about each of their involvement and knowledge relating to Plaintiff's allegations and any documents they may have in their possession. Plaintiff is not entitled, however, to documents created by Ms. Mrachek such as her interview notes or written correspondence to Defendant's in-house counsel about the investigation as these are protected by the attorney-client privilege and work product privilege as internal investigation materials. *See, e.g.*, *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, No. 17CV1642, 2019 WL 1574806, at *10 (E.D.N.Y. Apr. 11, 2019) (finding that both doctrines applied when outside counsel was hired to conduct an internal investigation); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) (finding that both doctrines applied to outside counsel's witness interview notes and related memoranda); *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 381 (1991) (noting the work product privilege might apply but finding that such analysis was unnecessary since the report was covered by the attorney-client privilege).

A. The Attorney-Client Privilege is Applicable

The attorney-client privilege extends to communications between a client and agents acting on behalf of counsel. *Gucci Am., Inc. v Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (citing *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961)). Specifically, "[f]actual investigations conducted by an agent of the attorney, such as 'gathering statements from employees, clearly fall within the attorney-client rubric.' Thus, courts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys." *Id.* (citing multiple cases). As the Supreme Court in *Upjohn* recognized, the attorney-client privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable [her] to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Here, Ms. Mrachek's notes, which were created and prepared as part of her providing legal analysis and guidance to in-house counsel so she can advise the company, are protected by the attorney-client privilege. *See Parneros v. Barnes & Noble, Inc.*, 18 Civ. 7834 (JGK) (GWG), at *14-15 (S.D.N.Y. Oct. 4, 2019) ("Keating's notes, if prepared for Feuer in order to facilitate his provision of ongoing legal advice to the company, fit within the privilege".)

SCHWARTZ PERRY & HELLER LLP

Ms. Mrachek being an attorney does not negate the fact she was acting as an agent of Defendant's in-house counsel when she conducted the investigation. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15CV05345, 2019 WL 2865102, at *4 (S.D.N.Y. July 3, 2019) ("[B]ecause the first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant, factual investigations nvestigations conducted or directed by an attorney fall within the attorney-client rubric." (citation omitted)).

B. The Work Product Privilege is Applicable

The work product doctrine under Fed. R. Civ. P. 26(b)(3) states that "ordinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." These documents are discoverable if a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. Plaintiff seeks to obtain Defendant's counsel's work product, clearly undertaken in anticipation of litigation, and cannot demonstrate any need for such documents that would necessitate production.

Plaintiff is deposing the same individuals who were interviewed during the investigation. In so doing, Plaintiff will be obtaining the substantial equivalent information obtained by Ms. Mrachek. Thus, Plaintiff has not asserted or shown she has a substantial need for the interview notes to prepare her case and that she is not able to obtain the substantial equivalent by other means—because she can't since she is deposing the same people interviewed. This is an attempt by Plaintiff to undermine the sacred attorney-client relationship and work-product doctrine and to unnecessarily increase costs for Defendant.

Plaintiff's reliance on *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 14 (E.D.N.Y. 2014) is misplaced. In *Koumoulis* the court held the work product protection did not apply to an internal investigation conducted by someone in the human resources department even though the person consulted with outside counsel during the investigation. The court found outside counsel advised the person conducting the investigation not on litigation issues but rather on how to conduct the internal investigation and how to address the plaintiff's ongoing work performance issues and thus the documents relating to that process were not prepared in anticipation of litigation. As explained above, this is not the situation here.

C. Defendant is Not Relying upon the Investigation as a Defense and thus Privilege Applies

Plaintiff argues that "even if a privilege applied, Harman has waived it by asserting the Faragher/Ellereth affirmative defense in ¶135 of its Answer". Paragraph 135 of the Answer states:

> Plaintiff's claims for relief are barred because Defendant exercised reasonable care in promulgating an unlawful discriminatory policy and complaint procedure, took measures to correct or prevent any alleged unlawful discrimination, and Plaintiff failed to reasonably take advantage of the corrective or preventative opportunities provided by Defendant or to otherwise avoid harm.

SCHWARTZ PERRY & HELLER LLP

To the extent Plaintiff interprets this paragraph as Defendant using or relying upon the investigation as a defense, Plaintiff is mistaken--as has been explained to Plaintiff's counsel in an effort to resolve this issue without court intervention. Defendant is not relying upon the investigation in any manner as part of it defense to the lawsuit.

When a party is not relying upon an investigation as part of its defense, there is not a waiver of attorney-client privilege and work product protections. *See Robinson v. Vineyard Vines, LLC,* 2016 WL 845283, at *2 (S.D.N.Y. Mar. 4, 2016) (in finding that privilege and work product protections over an internal investigation were not waived, noting that defendants did *not* assert a *Faragher-Ellerth* defense over any "*investigation* conducted into Plaintiff's claims," but only assert as a defense: "(1) the existence of anti-harassment policies; and (2) [p]laintiff's failure to take advantage of those policies during her term of employment"); *Welland v. Trainer,* No. 00 CIV. 0738 (JSM), 2001 WL 1154666, at *1 (S.D.N.Y. Oct. 1, 2001), *aff'd sub nom. Welland v. Citigroup Inc.,* 116 F. App'x 321 (2d Cir. 2004) (in finding that attorney-client privilege and work product protections over parts of an investigation conducted after plaintiff's termination was *not* waived, noting that "[d]efendants are relying only on the facts discovered through interviewing witnesses and reviewing documents."). *See generally Geller v. N. Shore Long Island Jewish Health Sys.,* No. 10 Civ. 170(ADS)(ETB), 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) (denying motion to compel privileged investigatory documents where defendants were not asserting a *Faragher–Ellerth* defense); *Julie Angelone v. Xerox Corp.,* No. 09-CV-6019-CJS, 2012 WL 537492, at *3 (W.D.N.Y. Feb. 17, 2012) (privilege is only waived "if Defendant relies on those [privileged investigation] documents for its *Faragher/Ellerth* defense."); *Koumoulis v. Indep. Fin. Mktg. Grp.* 295 F.R.D. at 41 (noting that a party may decide *not* to assert a defense in order to avoid waiving privilege). Accordingly, Plaintiff's reliance on *Tromblee v. State of N.Y.*, 2022 U.S. Dist. LEXIS 127385, at *69 (N.D.N.Y. July 19, 2022) is inapplicable to the instant matter as Defendant is not relying on the investigation as part of its defense.

Finally, Defendant did not "trick" Plaintiff into participating in the interview with Ms. Mrachek—Plaintiff conditioned her participation in the interview upon having her own counsel present for the interview, and Plaintiff's counsel fully participated in the interview process. To the extent Plaintiff maintains she is entitled to depose non-party Ms. Mrachek and plans on subpoenaing her, Defendant respectfully requests permission to seek a protective order and/or move to quash the subpoena. Defendant further states it will provide Plaintiff with a privilege log within one week of the submission of this letter.

We thank the Court for its consideration of this matter.

Respectfully submitted,

DAVIDA S. PERRY

IVIE A. SERIOUX

DSP/arp
cc:     All counsel – via ECF